UNITED STATES of America, Appellee,

v.

Joseph James MORRIS, Appellant.

No. 83–2241.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1984.

Decided Aug. 20, 1984.

Rehearing and Rehearing En Banc
Denied Sept. 27, 1984.

Philip N. Hogen, U.S. Atty., D.S.D., Reed Rasmussen, Asst. U.S. Atty., Rapid City, S.D., for appellee.

Steven C. Beardsley, Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, S.D., Thomas Morris, Arlington, Va., for appellant.

Before BRIGHT, ARNOLD and FAGG, Circuit Judges.

FAGG, Circuit Judge.

A jury returned guilty verdicts against Joseph James Morris on two counts of a four-count indictment for knowingly and willfully making false or fraudulent state-

**190**

ments or representations in matters within the jurisdiction of a department or agency of the United States, in violation of 18 U.S.C. § 1001. Count II was dismissed on the government's motion, and the jury acquitted Morris on Count IV. The conviction on Count I was based on Morris' statement to an agent of the Internal Revenue Service that his corporation owned no real property. When he made the inquiry, the IRS agent was seeking assets from which to secure payment of the corporation's unpaid federal taxes. The conviction on Count III was based on Morris' representations to the Small Business Administration, in connection with a loan application on behalf of the corporation, that the corporation owed no federal taxes. On appeal Morris contends that (1) his answer concerning the corporation's ownership of property was merely an exculpatory denial which is not punishable under 18 U.S.C. § 1001, (2) the district court committed error when it refused to dismiss Count I and instructed the jury that the deed by which the corporation took title to the real property was valid, (3) the evidence was insufficient to support the conviction on Count III, (4) a mistrial should have been declared for the violation of a sequestration order by a government witness, and (5) a mistrial should have been declared because a government agent falsified affidavits and the government did not reveal this misconduct to defense counsel. We affirm.

In July 1979, an IRS agent interviewed Morris in an attempt to determine whether assets were available from which unpaid federal taxes owed by Courthouse Conoco, Inc. could be recovered. Morris was at that time the corporation's president. When asked by the agent whether Courthouse Conoco, Inc. owned any real property, Morris responded that it did not. The agent later discovered documents on file which indicated that Courthouse Conoco, Inc. owned real property in Rapid City, South Dakota. A criminal investigation was begun and ultimately the charge was made in Count I of the indictment that Morris had knowingly and willfully made a false or fraudulent statement or represen-

tation when he told the IRS agent that Courthouse Conoco, Inc. owned no real property.

Morris contends that his answer "none" in response to the agent's question whether Courthouse Conoco, Inc. owned real property is not the kind of statement or representation which is subject to punishment under 18 U.S.C. § 1001. The Supreme Court has not given this section a narrow reading, however. "Section 1001 expressly embraces false statements made 'in *any* matter within the jurisdiction of *any* department or agency of the United States.' 18 U.S.C. § 1001 (emphasis supplied)." *United States v. Rodgers,* —— U.S. ——, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984). The Court has recognized "congressional intent to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." *United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941). "There is no indication in either the committee reports or in the congressional debates that the scope of the statute was to be in any way restricted." *United States v. Bramblett,* 348 U.S. 503, 507, 75 S.Ct. 504, 507, 99 L.Ed. 594 (1955) (footnotes omitted), *quoted in Rodgers, supra,* 104 S.Ct. at 1947. In *Bryson v. United States,* 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969), the Court noted the "valid legislative interest in protecting the integrity of official inquiries," and held that "[a] statutory basis for an agency's request for information provides jurisdiction enough to punish fraudulent statements under § 1001." *Id.* at 70–71, 90 S.Ct. at 359 (citations and footnotes omitted), *quoted in Rodgers, supra,* 104 S.Ct. at 1947.

The Secretary of the Treasury is given the authority to "collect the taxes imposed by the internal revenue laws," 26 U.S.C. § 6301, and to supervise their administration and enforcement. 26 U.S.C. § 7801(a). Hence, there was a statutory basis for the question directed to Morris by the IRS agent. In addition, a false statement in the

circumstances of this case would impair the integrity of an official inquiry, *see Bryson, supra,* 396 U.S. at 70, 90 S.Ct. at 359, and pervert an authorized function of a governmental agency. *See Gilliland, supra,* 312 U.S. at 93, 61 S.Ct. at 522. Morris' response to the agent's question thus falls within the operation of section 1001. *See United States v. Fern,* 696 F.2d 1269, 1273 (11th Cir.1983); *United States v. McCue,* 301 F.2d 452, 455–56 (2d Cir.), *cert. denied,* 370 U.S. 939, 82 S.Ct. 1586, 8 L.Ed.2d 808 (1962); *cf. United States v. Knox,* 396 U.S. 77, 80–81, 90 S.Ct. 363, 365–366, 24 L.Ed.2d 275 (1969) (false wagering forms filed with IRS "concededly" within section 1001).

The Fifth Circuit has held, however, that a generally negative and exculpatory response made by a person under criminal investigation in reply to a question by an investigating officer is not a crime under section 1001. *See United States v. Hajecate,* 683 F.2d 894, 899–901 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2086, 77 L.Ed.2d 298 (1983); *United States v. Bush,* 503 F.2d 813, 817–19 (5th Cir.1974); *United States v. Lambert,* 501 F.2d 943, 946 (5th Cir.1974). Morris argues that his answer to the IRS agent falls within this exception. Even if this exception were a part of the case law of our circuit, though, we would not apply it where, as here, the response impeded an essential agency function, the question posed was merely a routine administrative inquiry, and a truthful answer to the question would not have involved possible self-incrimination. *See United States v. Grotke,* 702 F.2d 49, 53–54 (2d Cir.1983); *United States v. Carrier,* 654 F.2d 559, 561 (9th Cir.1981); *United States v. Fitzgibbon,* 619 F.2d 874, 879–81 (10th Cir.1980). In this instance the IRS agent was fulfilling his administrative responsibilities pertaining to collection of taxes, not pursuing a criminal investigation. Morris could not reasonably have harbored the notion that he would be admitting illegal activity if he acknowledged that the corporation owned property. An affirmative answer to the IRS agent's question would not have incriminated Morris. It merely would have established that assets

were available from which to satisfy the corporation's tax liability. Because Morris was not asked to choose between giving a false negative answer and incriminating himself by stating the truth, *see Fitzgibbon, supra,* 619 F.2d at 881, we hold that his answer is punishable under section 1001.

■ Morris contends that Count I should have been dismissed because title was not conveyed to Courthouse Conoco, Inc., and hence he could not have knowingly and willfully made a false statement when he denied that the corporation owned real property. At the closing of the corporation's loan, on August 14, 1978, an SBA documents examiner noticed that the deed mistakenly showed the grantee as Joseph James Morris and changed the document to show Courthouse Conoco, Inc. as the grantee. The change was initialed by Dennis Deckard, the vice president of grantor Direct Sales Tire Company, who had executed the deed before a notary public on August 8, 1978. Morris maintains that the deed's acknowledgment was rendered defective by the change in the name of the grantee, and that as a consequence the deed was invalid to convey the property to the corporation. Although acknowledgment generally is a prerequisite to recording an instrument affecting title, *see* S.D. Codified Laws Ann. § 43–28–8 (1983), "[a]n unrecorded instrument is valid as between the parties thereto and those who have notice thereof." *Id.* § 43–28–14. Thus, even if the conveyance to Courthouse Conoco, Inc. was improperly acknowledged, the lack of proper acknowledgment would not make the deed evidencing that conveyance invalid.

■ Absent dismissal of the count, Morris argues in the alternative that the district court committed error when it gave the following instruction to the jury:

During the course of trial, certain evidence was admitted regarding the modification of a warranty deed, Exhibit 155. You are instructed that Exhibit 155 was not invalidated by such modification. You are further instructed that Exhibit

155 passed valid title to the property in question from Direct Sales Tire Company to Courthouse Conoco, Inc.

He contends that the instruction is erroneous and that it improperly denied him an opportunity to argue factual questions to the jury concerning the validity of the deed and whether his statement, if false, was made knowingly and willfully. Morris has cited no authority which persuades us that the instruction given is itself an incorrect statement of South Dakota law, however. Because he did not make a proper request at trial for additional or clarifying instructions in accordance with the procedural requirements of Fed.R.Crim.P. 30, our consideration of his contentions concerning the effect of the instruction is limited by the plain error rule. *See* Fed.R.Crim.P. 52(b); *United States v. Farber*, 630 F.2d 569, 572 (8th Cir.1980), *cert. denied*, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). Reversal for plain error is warranted only if Morris' substantial rights were affected and a miscarriage of justice would otherwise result. *See United States v. Bear Ribs*, 722 F.2d 420, 424 (8th Cir.1983). To be sure, the instruction could have been amplified to indicate that the deed's validity did not necessarily establish that Morris knowingly and willfully gave a false answer to the IRS agent. Nevertheless, we are not convinced that plain error occurred. Indeed, the district court, in overruling Morris' objection to the instruction, clearly indicated that Morris would be free to argue to the jury that he did not believe or understand that title had passed to the corporation, as opposed to himself:

> It is within your right, if you so desire, to argue intent, specific intent, what he thought is important in this case. * * * I am now satisfied that the transfer was perfectly legitimate. You can argue the tar out of whether this man understood that and believed that. That's where the issue is at.

Tr. at 757–58.

■ In Count III of the indictment it was charged that as part of his loan application Morris falsely made representations to the SBA that Courthouse Conoco, Inc. was current on federal taxes, when in fact the corporation owed a substantial sum in unpaid taxes. Morris contends that the evidence is insufficient to show that he was aware of the tax liability at the time he made the representations; however, the jury's verdict must be sustained against an attack based on the sufficiency of the evidence if there is substantial evidence, viewed in the light most favorable to the government, to support it. *Burks v. United States*, 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978); *United States v. Grego*, 724 F.2d 701, 704 (8th Cir.1984). The government is entitled to the benefit of all reasonable inferences. *Id.* When examined in the light of the applicable standards, we believe the evidence is sufficient to sustain the guilty verdict on Count III. Evidence at trial showed that Morris had discussed the corporation's tax liability at a corporate meeting, that numerous notices of delinquent taxes had been sent, and that in compliance with a summons directed to him in July 1980, Morris had produced copies of notices covering the relevant time period.

■ We next consider Morris' argument that the district court should have granted his motion for mistrial. He cites two grounds supporting declaration of mistrial. First, he contends that a government witness, who was permitted to remain in the courtroom during trial, spoke to prospective witnesses in violation of a sequestration order. Second, he contends that a government agent falsified affidavits which were later introduced at trial, and that the government failed to disclose the falsifications to him before trial. It would not be productive to recite here the government's counter-arguments concerning the factual circumstances and the applicable law. As a general rule, the decision as to whether a trial has been so tainted that a mistrial should be declared lies within the discretion of the district court. *See United States v. Reed*, 724 F.2d 677, 679–80 (8th Cir.1984). We are satisfied that there was no abuse of this discretion by the district

court. Morris' argument concerning the government's failure to disclose was not made in the district court, and because no clear miscarriage of justice will result as a consequence, we do not consider it on appeal. *See United States v. Studna*, 713 F.2d 416, 419 (8th Cir.1983).

Affirmed.