UNITED STATES of America,
Appellant,

v.

Felix TAYLOR, Appellee.

No. 89–2668.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1990.

Decided July 3, 1990.

Patty Merkamp Stemler, Washington, D.C., for appellant.

Richard E. Holiman, Little Rock, Ark., for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and BRIGHT, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The government appeals from an order of the district court[1] dismissing two counts of an indictment which charged Felix Taylor with violating 18 U.S.C. § 1001 (1988) by making false statements during a bankruptcy hearing. 105 B.R. 486. The court dismissed these counts based upon the judicially-created "exculpatory no" exception to section 1001 prosecutions. This doctrine provides that an individual who merely supplies a negative and exculpatory response to an investigator's questions does not make a false statement in violation of section 1001. Though this circuit has not yet adopted the "exculpatory no" doctrine, we now do so and affirm the district court's dismissal of the section 1001 counts.

The dismissed charges arise from the bankruptcy proceedings in district court of Magalene Taylor, Felix Taylor's estranged wife. Soon after she filed her bankruptcy petition, two motions were filed in the bankruptcy proceeding which were purportedly signed by Magalene Taylor. Upon learning of these filings, Magalene Taylor notified the bankruptcy court[2] that she had not signed either pleading. The bankruptcy court then held a hearing to determine the origin and status of these motions. Magalene Taylor, her attorney, and Felix Taylor attended the hearing. The following exchange took place between the bankruptcy judge and Felix Taylor about the first document allegedly containing Magalene Taylor's signature:

Judge Scott: Mrs. Taylor do you know who prepared this, a motion to reinstate the Chapter 13 case? It's dated November 23rd, 1988. Do you know who prepared this pleading? Do you know anything about this pleading? Are you Mr. Taylor?

Felix Taylor: Yes, I am.

Judge Scott: You filed a motion to intervene in this proceeding too, do you know who filed this pleading and signed this pleading?

F. Taylor: I don't have any idea what pleading you are referring to, your honor.

Judge Scott: All right, would you come to the bench and take a look at this pleading and this signature?

F. Taylor: This signature here?

Judge Scott: Un-hun.

F. Taylor: This pleading here, the 23rd of November?

Judge Scott: Un-hun.

F. Taylor: I, uh, was not aware that, that, uh, Chapter 13, this petition was at issue. I did not even get notice of this hearing.

Judge Scott: Then why are you here?

F. Taylor: Because I talked to Mr. Jones and he told me that I needed to be here.

Judge Scott: Well I'm asking you a question now. You've looked at this. Do you know who filed this and signed this? Mrs. Taylor ...

F. Taylor: Pardon me.

Judge Scott: ... said she did not file this and sign this pleading.

F. Taylor: Pardon.

Judge Scott: Mrs. Taylor said that she did not file this pleading or sign it. Do you know who filed it or signed it?

F. Taylor: I'm not aware of the pleading.

(Transcript excerpt from bankruptcy proceeding, Appellant's Addendum at 22–23). This last statement of Taylor's is the basis for count I of the indictment. The following discussion then took place between the judge and Taylor about the second doc-

1. The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

2. The Honorable Mary Scott, United States Bankruptcy Judge for the Eastern District of Arkansas.

ument which Magalene Taylor allegedly signed:

Judge Scott: Have you've [sic] seen this pleading before?

F. Taylor: Yes, I've seen it before.

Judge Scott: Do you know who signed that pleading?

F. Taylor: No ma'am, I don't.

*Id.* at 24. Taylor's last statement serves as the basis for count II. The government alleges that Felix Taylor was the person who forged Magalene Taylor's name on both documents. Accordingly, Taylor was charged with two counts of violating 18 U.S.C. § 1001 based upon his denying knowledge of the circumstances of the filings.

Taylor moved to dismiss these counts on the basis that they fell within the "exculpatory no" exception to section 1001 because they were merely negative, exculpatory responses to investigative questions. Observing that this doctrine had never been adopted by this circuit, the district court thoroughly discussed the background and policy considerations of both section 1001 and the "exculpatory no" doctrine. The court stated that the doctrine "evolved out of concerns for a defendant's privilege against self-incrimination as well as the possible abuse of the statute due to its extremely broad language." The court then concluded that this circuit would adopt the doctrine, given the appropriate opportunity to do so, and that the circumstances leading to Taylor's allegedly false statements called for its application here. In the court's view, Taylor faced the dilemma of either incriminating himself by admitting that he forged the signatures or lying to avoid incrimination. The court therefore dismissed these two counts. This appeal followed.

## I.

The government contends that the district court erred by dismissing the two section 1001 counts. It urges that we should not adopt the judicially-created "exculpatory no" doctrine because neither the plain language of section 1001 nor its legislative history contains such an exception.

Alternatively, assuming that this circuit is receptive to this doctrine, the government argues that it is inapplicable to the circumstances giving rise to Taylor's allegedly false statements. These arguments present questions of law which we review de novo. *United States v. Alzate–Restreppo*, 890 F.2d 1061, 1066 (9th Cir.1989).

## A.

■ We begin by examining the language of the statute itself. It provides that:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1001. It is evident, as the government contends, that the plain language of the statute does not contain an "exculpatory no" exception.

Section 1001 originated from a statute passed in response to "a spate of frauds upon the Government." *United States v. Bramblett*, 348 U.S. 503, 504, 75 S.Ct. 504, 505, 99 L.Ed. 594 (1955). Through amendments to the statute, which was enacted in 1863, Congress has expanded its scope beyond false statements causing pecuniary loss to the government to cover a wider range of fraudulent practices. "Congress intentionally drafted section 1001 in an expansive fashion in order that it be accorded the broadest possible interpretation regarding the situations in which it would come into play." *United States v. Steele*, 896 F.2d 998, 1001 (6th Cir.1990). The Supreme Court's interpretations of the statute have also given it a broad scope. *See United States v. Rodgers*, 466 U.S. 475, 480, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984) (stating that the statute covers a myriad of government activities); *see also*

*Bryson v. United States,* 396 U.S. 64, 70, 90 S.Ct. 355, 359, 24 L.Ed.2d 264 (1969); *Bramblett,* 348 U.S. at 508, 75 S.Ct. at 507; *United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 85 L.Ed. 598 (1941).

Despite this expansive construction, the circuits which have squarely addressed the applicability of the "exculpatory no" doctrine have concluded that, "under certain circumstances, the government may not prosecute an individual for false or fraudulent statements which were made in response to questioning initiated by the government where a truthful statement would have incriminated the defendant." *Steele,* 896 F.2d at 1001. An examination of these cases persuades us as well that we should apply the "exculpatory no" doctrine to this case.

The doctrine was initially articulated in *United States v. Stark,* 131 F.Supp. 190 (D.Md.1955), where the court distinguished between affirmative representations and mere exculpatory denials, and held that the latter were not "statements" within the meaning of section 1001. *Id.* at 204–06. The court declared that the statute's purpose was to "protect the government from the affirmative or aggressive and voluntary actions of persons who take the initiative, or, in other words, to protect the government from being the victim of some positive statement, whether written or oral, which has the tendency and effect of perverting its normal proper activities." *Id.* at 205.

In the leading case of *Paternostro v. United States,* 311 F.2d 298 (5th Cir.1962), the Fifth Circuit held that a defendant who gave allegedly false answers to questions asked by an IRS agent during an investigation did not violate section 1001. *Id.* at 305. The court concluded that the defendant "did not aggressively and deliberately initiate any positive or affirmative statement calculated to pervert the legitimate functions of Government." *Id.* In *United States v. Bush,* 503 F.2d 813 (5th Cir.1974), the Fifth Circuit stated "that there is a valid distinction between negative exculpatory denial of a suspected misdeed and an affirmative representation of facts pecu-

liarly within the knowledge of the suspect not otherwise obtainable by the investigator." *Id.* at 818. The Fifth Circuit provides a thorough discussion of the doctrine in other cases as well. *See United States v. Abrahams,* 604 F.2d 386, 394–95 (5th Cir.1979); *United States v. Schnaiderman,* 568 F.2d 1208, 1212–14 (5th Cir.1978).

In *United States v. Chevoor,* 526 F.2d 178 (1st Cir.1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976), the First Circuit held that a defendant's denials to an FBI investigator were not "statements" for the purpose of section 1001. *Id.* at 184. The court declared that the statute was intended to proscribe two categories of false statements: "those in support of fraudulent claims, and those tending to pervert the authorized functions of departments and agencies." *Id.* at 183. The defendant's statements fell in neither category as he "did not initiate anything; he did not even go so far as to fabricate a misleading story in response to the inquiries. He merely gave negative, oral responses to the questioning." *Id.* at 183–84.

The Fourth Circuit adopted the "exculpatory no" doctrine in *United States v. Cogdell,* 844 F.2d 179 (4th Cir.1988), and held that a defendant's allegedly false statements to a Secret Service agent did not violate section 1001 because they "were not volunteered with the intent to induce government action, but were instead exculpatory responses to questioning initiated by government agents." *Id.* at 182. The court declared that the doctrine "balance[d] the need for protecting the basic functions of government agencies with the concern that a criminal suspect not be forced to incriminate himself in order to avoid punishment under section 1001." *Id.* at 183. The court identified the reason for the exception as follows: "False statements that pervert an agency's routine administrative functions are the specific target Congress intended the statute to reach, while the exception was created to protect negative responses to interrogation by a criminal investigator." *Id.* at 184 (citation omitted). The court then summed up its reasoning for adopting the doctrine:

The sanction of section 1001 plays an important role in protecting the effectiveness of government agencies whose functions require them to rely on the accuracy of the information they receive. The statute, however, was not intended to compel persons suspected of crimes to assist criminal investigators in establishing their guilt.

*Id.* at 185.

The Ninth Circuit has also addressed the applicability of the "exculpatory no" doctrine. In *United States v. Bedore,* 455 F.2d 1109 (9th Cir.1972), the court held that the statute did not proscribe the conduct of a defendant who gave a false name when he was served with a subpoena. *Id.* at 1110. The court noted that a literal reading of section 1001 "would swallow up perjury statutes and a plethora of other federal statutes proscribing the making of false representations in respect of specific agencies and activities of Government." *Id.*

The Eleventh Circuit applied the "exculpatory no" doctrine to allegedly false statements made by a notary public to an IRS investigator in *United States v. Tabor,* 788 F.2d 714 (11th Cir.1986). "[T]he agent, acting in a police role, aggressively sought a statement from a person under suspicion and not warned. The answer was essentially an exculpatory 'no' as to possible criminal activity." *Id.* at 719.

As the district court in this case noted after surveying the cases discussing the "exculpatory no" doctrine, the Second and Seventh Circuits have neither adopted nor rejected the doctrine, but have indicated that it should be given a narrow construction. *See United States v. Capo,* 791 F.2d 1054, 1069 (2d Cir.1986); *United States v. King,* 613 F.2d 670, 674 (7th Cir.1980). "[A]ny statement beyond a simple 'no' does not fall within the exception." *Capo,* 791 F.2d at 1069. Applying this narrow rule of construction to the case before us, it cannot be said that Taylor's statements were more than simple, exculpatory denials.

The Sixth Circuit is the most recent circuit to adopt the "exculpatory no" exception. The court, in *United States v. Steele,* 896 F.2d 998 (6th Cir.1990), held the doctrine applicable to a defendant's statements to an IRS agent. *Id.* at 1005. The court noted that the doctrine, "which appears to be receiving widespread acceptance by federal courts of appeals, is anchored, *inter alia,* upon the Fifth Amendment's protection against self incrimination through the use of compelled statements." *Id.* at 1001.

Our study of these decisions and the well-reasoned opinion of the district court causes us to conclude that section 1001 was not intended to proscribe mere exculpatory denials of guilt. "We are persuaded ... that the 'exculpatory no' doctrine is a narrow yet salutory limitation on a criminal statute which, because of its breadth, is subject to potential abuse." *Cogdell,* 844 F.2d at 183. Accordingly, we hold that the "exculpatory no" doctrine should be applied to this case.

### B.

The government next argues that, even if we are to accept the "exculpatory no" doctrine, it should not shield Taylor's allegedly false statements from prosecution, given the circumstances in which the statements were made.

The Ninth Circuit set out a five-factor test in *United States v. Medina De Perez,* 799 F.2d 540 (9th Cir.1986), for considering application of the "exculpatory no" doctrine. In order for the doctrine to exempt a statement from prosecution under section 1001, the statement must satisfy all of the following requirements:

(1) It must not have been made in pursuit of a claim to a privilege or a claim against the government;

(2) It must have been made in response to inquiries initiated by a federal agency or department;

(3) It must not have perverted the basic functions entrusted by law to the agency;

(4) It must have been made in the context of an investigation rather than in the routine exercise of administrative responsibility; and

(5) It must have been made in a situation in which a truthful answer would have incriminated the declarant.

*Id.* at 544 & n. 5; *see also Steele,* 896 F.2d at 1002 n. 4; *Cogdell,* 844 F.2d at 183. The government claims that the latter three requirements are not met on the facts before us.

■ The government asserts that Taylor's allegedly false statements impaired the basic functioning of the bankruptcy court because the court was unable to determine whether Magalene Taylor was attempting to defraud the court or whether a third party was unlawfully interfering in the proceedings. According to the government, the court was misled by Taylor's answers and therefore unable to resolve the issue of whether the pleadings were valid. We reject this contention. The district court properly distinguished between the possible impairing effect of the allegedly false filings and that of the allegedly false statements, and held that the latter, in the context in which they were made, were unlikely to impair the court's functioning. The bankruptcy court should not have been overly surprised that Taylor denied guilt. *See Cogdell,* 844 F.2d at 184. "A false denial of guilt does not pervert the investigator's basic function in the manner the statute was intended to combat, but is merely one of the ordinary obstacles confronted in a criminal investigation." *Id. See also Paternostro,* 311 F.2d at 303–04.

The government also asserts that Taylor's statements were not made in the context of a criminal investigative proceeding but were made during a civil bankruptcy proceeding. It contends that the hearing involved an administrative, "housekeeping" function.[3] "It is generally regarded that 'the "exculpatory no" exception applies when the inquiring government agent acts as a police investigator and not when the

agent's questions constitute a routine exercise of administrative responsibility.'" *Steele,* 896 F.2d at 1002 (quoting *United States v. Equihua–Juarez,* 851 F.2d 1222, 1225 (9th Cir.1988)). *See also Cogdell,* 844 F.2d at 184; *Medina De Perez,* 799 F.2d at 545.

■ We are persuaded that Taylor's statements were made in the context of an investigative proceeding. Conducting a hearing in order to investigate allegations of forgery and unauthorized pleadings cannot be characterized as merely a "housekeeping" function for the bankruptcy court. Determining the validity of the signatures on the filings was an essential judicial function. Our study of the transcript reveals that the court was aggressively pursuing a line of questioning, as it should have, to determine the issue before it. The court recognized its duty to report suspected violations of the law to the United States Attorney. The judicial inquiry as to the validity of the signatures thus could lead to criminal charges against Taylor. Taylor's belief that he was under interrogation is shown by his later request to consult with an attorney.

■ Finally, the government argues that Taylor would not have incriminated himself by providing truthful answers to the court's questioning. Courts have refused to apply the doctrine where a truthful response would not have been incriminatory. *See, e.g., United States v. Holmes,* 840 F.2d 246, 249 (4th Cir.), *cert. denied,* 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *United States v. Morris,* 741 F.2d 188, 191 (8th Cir.1984). The government's argument is based upon the assertion that Taylor held a power of attorney executed by Magalene Taylor authorizing him to act on her behalf in legal proceedings. We must also reject this argument. While the

---

**3.** The government also argues that Taylor's statements do not fall under the "judicial function" exception to section 1001 prosecutions. In *Morgan v. United States,* 309 F.2d 234 (D.C.Cir. 1962), *cert. denied,* 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963), the court held that the statute applies to administrative or housekeeping functions of the court, but not the "'judicial'

machinery of the court." *Id.* at 237. *See also United States v. Mayer,* 775 F.2d 1387, 1391–92 (9th Cir.1985); *Abrahams,* 604 F.2d at 395. While we believe that the judicial function exception might provide a further basis for our decision, we need not address the applicability of this doctrine because we hold that the "exculpatory no" doctrine applies.

power of attorney may have provided a defense to charges of forging Magalene Taylor's signature, the matter is not as simple as the government portrays it. Given Magalene Taylor's allegations of forgery and unauthorized filings, and the investigatory atmosphere of the hearing, Felix Taylor's fear of self-incrimination was justified. The doctrine does not require an admission of guilt; only interrogation which is "reasonably likely to elicit incriminating information relevant to establishing elements necessary for conviction of the charged offense." *Steele*, 896 F.2d at 1003 (quoting *Equihua–Juarez*, 851 F.2d at 1226). *See also* Black's Law Dictionary 691 (5th ed. 1979) (definition of "incriminatory statement").

## II.

We are satisfied that Taylor's exculpatory denials of guilt, made in a judicial proceeding in which he reasonably believed that affirmative responses would have been incriminatory, were not the type of false statements which section 1001 was intended to proscribe. Accordingly, we affirm the order of the district court dismissing the section 1001 charges against Taylor.