UNITED STATES of America, Plaintiff,

v.

Roger RAETHER and Russell
D. Hawkins, Defendants.

CR 95–40012.

United States District Court,
D. South Dakota,
Southern Division.

Oct. 7, 1996.

Ted L. McBride, U.S. Attorney's Office, Rapid City, SD, John J. Ulrich, U.S. Attorney's Office, Sioux Falls, SD, for Plaintiff.

Frank E. Denholm, Denholm, Glover & Britzman, Brookings, SD, for Defendant, Roger Raether.

James E. McMahon, Gregg S. Greenfield, Boyce, Murphy Law Firm, Sioux Falls, SD, for Defendant, Russell D. Hawkins.

## MEMORANDUM OPINION AND ORDER

PIERSOL, District Judge.

Defendant Roger Raether moves to dismiss Count II of the indictment, which charges him under 18 U.S.C. § 1001 with making a false statement as to a material matter within the jurisdiction of the General Services Administration (GSA). He argues dismissal is proper because the statement at issue falls within the "exculpatory no" doctrine as adopted by the Eighth Circuit in *United States v. Taylor,* 907 F.2d 801, 802 (8th Cir.1990). The Court heard argument on the motion and, for the reasons set out below, the Court denies the motion.

At the first trial in this case, the government presented the testimony of Peggy Lowndes, a GSA official in California, and played for the jury an audiotape of a telephone conversation between Ms. Lowndes and defendant Raether. The transcript of this conversation is appended to the government's response to the motion to dismiss Count II. (Doc. 171.) Ms. Lowndes testified at the prior trial that she had authority to approve or disapprove the release of certain federal excess property and that, prior to her telephone conversation with defendant Raether, she had refused to approve an SF–122 form for the release of a 300–ton crane located in California that defendant Raether had screened for the Seminole Tribe of Florida. Ms. Lowndes testified that an FBI agent asked her in October 1993 to place a telephone call to defendant Raether for the purpose of gathering information. The agent provided the equipment needed to tape the telephone call and showed Ms. Lowndes how to use it. Her first attempt at reaching defendant Raether in October was not successful, but she later recorded the conversation that occurred in November 1993 when defendant Raether returned her call. This telephone conversation lasted approximately fifteen to thirty minutes. The basis of the false statement charge in Count II is the following exchange which occurred during the conversation:

> PEGGY LOWNDES: Uh-huh. Has—has—has there ever been any discussion involving property acquired for sale?
>
> ROGER RAETHER: I don't know anything about that okay? All I do is acquire the stuff for the Seminoles, okay?

(Doc. 171, Tr. at 1109.) Defendant Raether argues that his response to Ms. Lowndes's question falls within the "exculpatory no" exception and thus, no basis exists to prosecute him for making a false statement.

■ In *Taylor,* the government appealed from the district court's dismissal of two counts of an indictment charging Felix Taylor with making false statements during a bankruptcy court hearing. *Taylor,* 907 F.2d at 802. The district court dismissed the counts based upon the judicially-created "exculpatory no" exception to a prosecution under § 1001. *Id.* The Eighth Circuit adopted the "exculpatory no" doctrine, along with the Ninth Circuit's five-factor test for applying the doctrine, and affirmed the dismissals. *Id.* at 805–07. The five factors which must be met in each case are: (1) the false statement must not have been made in pursuit of a claim to a privilege or a claim against the government; (2) it must have been made in response to inquiries initiated by a federal agency or department; (3) it must not have perverted the basic functions entrusted by law to the agency; (4) it must have been made in the context of an investigation rather than in the routine exercise of administrative responsibility; and (5) it must have been made in a situation in which a truthful answer would have incriminated the declarant. *Id.* at 805–06.

Although defendant Raether relies heavily upon the *Taylor* decision, the legal underpinnings of that case have been seriously weakened by subsequent legal developments. Most importantly, in May 1995, the Supreme Court held that § 1001 does not apply to

false statements made during a bankruptcy court hearing, and expressly overruled its previous case of *United States v. Bramblett*, 348 U.S. 503, 504, 75 S.Ct. 504, 505, 99 L.Ed. 594 (1955). *Hubbard v. United States*, ——— U.S. ———, ———, 115 S.Ct. 1754, 1765, 131 L.Ed.2d 779 (1995). The Eighth Circuit relied upon *Bramblett* in its *Taylor* decision. Thus, it appears that *Taylor* was overruled *sub silentio* because the Supreme Court has now rejected the Eighth Circuit's view that § 1001, and its associated "exculpatory no" exception, apply in the context of a bankruptcy proceeding.

Similarly, other authorities cited in the opinion have been vacated, overruled, or weakened. *Taylor* relies heavily upon a line of Fifth Circuit cases applying the "exculpatory no" exception in § 1001 prosecutions, starting with the leading case of *Paternostro v. United States*, 311 F.2d 298 (5th Cir.1962). *Taylor*, 907 F.2d at 804. In early 1994, however, the Fifth Circuit, sitting en banc, discarded the "exculpatory no" exception to § 1001 as the law of that circuit because the exception cannot be found in the plain language of § 1001. *United States v. Rodriguez–Rios*, 14 F.3d 1040, 1045 (5th Cir.1994) (en banc). Very recently, the Second Circuit, following the reasoning of the Fifth Circuit, explicitly rejected the "exculpatory no" doctrine as a defense to a false statement charge under § 1001. *United States v. Wiener*, 96 F.3d 35 (2d Cir.1996).

The *Taylor* opinion also relied upon a Sixth Circuit case, *United States v. Steele*, 896 F.2d 998, 1001 (6th Cir.1990). The Sixth Circuit, however, vacated that panel opinion and granted rehearing en banc on July 1, 1990, three days before the *Taylor* decision was issued. On rehearing, the Sixth Circuit declined to apply the "exculpatory no" doctrine to the facts of the case and found it unnecessary to decide whether the doctrine is viable in other circumstances. *United States v. Steele*, 933 F.2d 1313, 1315 (6th Cir.) (en banc), *cert. denied*, 502 U.S. 909, 112 S.Ct. 303, 116 L.Ed.2d 246 (1991). The en banc Sixth Circuit criticized the Ninth Circuit's five-factor test and declined to adopt it, noting that at least one panel within the Ninth Circuit has also questioned the useful-

ness of the test. *Id.* at 1320–21. Finally, *Taylor* cited *United States v. Chevoor*, 526 F.2d 178, 184 (1st Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976), in which the First Circuit held that a defendant's denials to an FBI investigator were not "statements" for the purpose of applying the statute. At least one district court has suggested that the Supreme Court overruled *Chevoor sub silentio* when it held in *United States v. Rodgers*, 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984), that false statements made to an FBI agent in the course of a criminal investigation are proscribed by § 1001. *United States v. Caputo*, 633 F.Supp. 1479, 1486 n. 4 (E.D.Penn.1986).

Even if *Taylor* was not overruled by *Hubbard* and remains good law within the Eighth Circuit, the case expressly states that the "exculpatory no" exception is a narrow limitation on § 1001. *Taylor*, 907 F.2d at 805. Any statement beyond a "simple exculpatory denial" does not fall within the exception. *Id.*

■ Defendant Raether's response to Ms. Lowndes's question, which forms the basis for the false statement charge, was not a "simple exculpatory denial." He told her that he did not know anything about discussions that may have occurred among his associates pertaining to acquisition of federal excess property for re-sale. Because defendant Raether's specific response, "I don't know anything about that okay? All I do is acquire the stuff for the Seminoles, okay?" may be most properly interpreted as an affirmative misstatement, the "exculpatory no doctrine" does not apply in this case. *See United States v. Oakar*, 924 F.Supp. 232, 239 n. 7 (D.D.C.1996) ("A defendant who undertakes such affirmative attempts to mislead government officials is not entitled to claim the benefit of the doctrine.") Furthermore, it does not matter that Ms. Lowndes asked defendant Raether the question at the request of the FBI. *See Rodgers*, 466 U.S. at 479, 104 S.Ct. at 1946 (holding that criminal investigation falls within § 1001 and FBI qualifies as department or agency of United States). As then-Circuit Judge Ruth Bader Ginsburg wrote for the panel in *United*

*States v. White,* 887 F.2d 267, 274 (D.C.Cir. 1989):

> [t]he Supreme Court has made clear that the fifth amendment does not provide "a privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them." *Bryson v. United States,* 396 U.S. 64, 72, 90 S.Ct. 355, 360, 24 L.Ed.2d 264 (1969) (footnote omitted). *See also United States v. Knox,* 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969). [The defendant] could have refused to answer the incriminating question. Or, if he reasonably believed that he would lose his job for refusing to answer, he could have answered without waiving his fifth amendment privilege. [cited case omitted] Instead, he chose a third, unprotected response: He lied. He cannot now avail himself of the fifth amendment.

*See also Wiener,* 96 F.3d at 39 (holding that Fifth Amendment has no application where person lies instead of remaining silent); *Rodriguez–Rios,* 14 F.3d at 1049 (holding that Fifth Amendment does not independently justify "exculpatory no" exception because privilege protects one's right to remain silent in response to incriminating question, but outright lie is not protected); *Steele,* 933 F.2d at 1320 (criticizing Ninth Circuit five-factor test because an individual has constitutional privilege against self-incrimination, but has no constitutional right to give an untruthful statement). Despite the inroads into the doctrine, the doctrine should remain available as " 'a narrow yet salutory limitation on a criminal statute, which, because of its breadth, is subject to potential abuse.' " *Taylor,* 907 F.2d at 805 (quoted case omitted).

■ Finally, even if defendant Raether's response to Ms. Lowndes's question qualifies as a simple exculpatory denial, the first factor in the five-factor test adopted in *Taylor* is not met here. *Taylor* requires that all five factors must be satisfied in order for the "exculpatory no" exception to apply. The first requirement is that the statement must not have been made in pursuit of a claim against the government. Throughout the telephone conversation, defendant Raether did most of the talking, allegedly seeking, as the government points out, to allay Ms. Lowndes's concerns about the crane's destination and probably to convince her to authorize release of the crane on the SF–122 screening form. Defendant Raether's statements were thus made, as far as both he and Ms. Lowndes were concerned, in pursuit of a claim against the government, and the first factor is not met.

■ Ms. Lowndes also knew in that telephone call that, in addition to her normal duties as a federal employee, she was also assisting in an investigation into improper claims being made against her employer, the General Services Administration. The fact that the telephone call from Ms. Lowndes to the defendant was from her perspective made in the context of an investigation rather than in the routine course of administrative responsibility meets the fourth factor, but does not change the fact that the defendant was pursuing a claim against the government. Because the first of the five factors is not met, the doctrine cannot apply to the facts of this case. *See Taylor,* 907 F.2d at 805. Accordingly,

IT IS ORDERED:

(1) that defendant Raether's "Motion To Dismiss Count II Of The Indictment On The Basis Of The Exculpatory No Doctrine" is denied. (Doc. 159.)

(2) that defendant Raether's "Motion For Severance and Separate Trials" is denied. (Doc. 161.)

(3) that defendant Raether's "Motion To Exclude Hearsay Evidence Relating To Acquitted Co–Defendant" is denied. (Doc. 154.)

(4) that defendant Raether's "Motion Of Defendant For Disclosure Of Intention To Use Evidence Of Other Crimes, Wrongs, Or Acts" is denied as moot. (Doc. 158.)

(5) that defendant Hawkins's "Motion To Strike" is denied. (Doc. 163.)