## UNITED STATES v. BRAMBLETT.

No. 159.   Argued February 7, 1955.—Decided April 4, 1955.

*Charles F. Barber* argued the cause for the United States. With him on briefs were *Solicitor General Sobeloff, Assistant Attorney General Olney, Beatrice Rosenberg, Ralph S. Spritzer* and *Richard J. Blanchard.*

*Edward Bennett Williams* argued the cause for appellee. With him on the brief was *Murdaugh Stuart Madden.*

Mr. Justice Reed delivered the opinion of the Court.

On November 10, 1953, an 18-count indictment was returned in the United States District Court for the District of Columbia, charging the appellee, a former mem-

504

ber of Congress, with violations of 18 U. S. C. § 1001.[1] During the course of the trial a judgment of acquittal was ordered on counts 8 through 18 of the indictment. The jury returned a verdict of guilty on the remaining 7 counts which charged the appellee with having falsely and fraudulently represented to the Disbursing Office of the House of Representatives that a named woman was entitled to compensation as his official clerk. The District Court granted appellee's motion in arrest of judgment, holding that he had not falsified a material fact "within the jurisdiction of any department or agency of the United States" since the Disbursing Office was not a department or agency within the meaning of the statute. The District Court was of the opinion that the statute does not afford protection to the legislative and judicial branches of the Government. The Government brought this case here on direct appeal pursuant to 18 U. S. C. § 3731. Reference to the evolution of § 1001 will assist in determining the correctness of the decision below. A detailed analysis appears in the opinion of the trial court. 120 F. Supp. 857.

Section 1001 had its origin in a statute passed almost 100 years ago in the wake of a spate of frauds upon the Government. The Act of March 2, 1863, 12 Stat. 696, "An Act to prevent and punish Frauds upon the Government of the United States," made it a criminal offense for

"any person in the land or naval forces of the United States . . . [to] make or cause to be made, or present

---

[1] "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

or cause to be presented for payment or approval to or by any person or officer in the civil or military service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent . . . ."

This provision clearly covers the presentation of false claims against any component of the Government to any officer of the Government. The prohibition of the statute is broad, although its application was limited to military personnel.

False statements were proscribed in the following clause of the same section in these terms:

"any person in such forces or service who shall, for the purpose of obtaining, or aiding in obtaining, the approval or payment of such claim, make, use, or cause to be made or used, any false bill, receipt, voucher, entry, roll, account, claim, statement, certificate, affidavit, or deposition, knowing the same to contain any false or fraudulent statement or entry."

It will be noted that there is here no specification as to the group to whom the false statements had to be made. The provision in the false claims section which made the presentation of false claims to "any person or officer in the civil or military service of the United States" punishable might reasonably have been applied here. There would be no justification for giving the false statements section a narrower scope, for, so long as the false statement was made with the indicated purpose, the statute made it punishable.

From 1863 to 1934 the coverage of the statute was at various times extended, but no change was made which could be or is taken by the appellee as restricting the

scope of the false statements provision to the executive branch.[2]

The words urged as crucial in this case first appeared in the revision of 1934. 48 Stat. 996. No change was made in the false claims portion of the statute, but the false statements section was amended to read:

> "or whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, *in any matter within the jurisdiction of any department or agency of the United States or of any corporation in which the United States of America is a stockholder;* . . . ." (Italics supplied.)

The amendment deleted all words as to purpose and inserted the italicized phrase. Under the prior statutes there had been no possibility of a restrictive interpretation which would read out falsifications made to officers of the legislative or judicial branches. Did the insertion of the new phrase exclude those branches? We think not.

---

[2] Under the codification of December 1, 1873, approved June 22, 1874, R. S. § 5438, the statute was extended to cover "every person"—not merely military personnel. The Act of May 30, 1908, 35 Stat. 555, simply changed the penalties, and in the codification of 1909, 35 Stat. 1088, § 5438 was redesignated § 35. Section 35 was in turn revised in 1918, 40 Stat. 1015. The false claims provision was extended to cover corporations in which the United States held stock; and false statements were proscribed if made "for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States" as well as if made for the purpose of obtaining payment of a false claim.

The 1934 revision was largely the product of the urging of the Secretary of the Interior.[3] The Senate Report, S. Rep. No. 1202, 73d Cong., 2d Sess., indicates that its purpose was to broaden the statute so as to reach not only false papers presented in connection with a claim against the Government, but also nonmonetary frauds such as those involved in the "hot-oil" shipments. A greater variety of false statements were meant to be included.[4] There is no indication in either the committee reports [5] or in the congressional debates [6] that the scope of the statute was to be in any way restricted. There was certainly no suggestion that the new phrase was to be interpreted so that only falsifications made to executive agencies would be reached.[7] Apparently the italicized phrase was inserted simply to compensate for the deleted

---

[3] For a discussion of the legislative history of the Act, see *United States* v. *Gilliland*, 312 U. S. 86, 93–95.

[4] In *United States* v. *Cohn*, 270 U. S. 339, the Court held that the 1918 Act did not proscribe false statements made to a customs collector where the purpose was not to defraud the Government of either its money or property. After the 1934 amendment, however, the Court sustained an indictment charging the defendants with willfully falsifying reports required to be filed under the "Hot-Oil" Act of February 22, 1935. The Court stated that the purpose of the 1934 amendment was to remove the prior "restriction to cases involving pecuniary or property loss to the government." *United States* v. *Gilliland*, 312 U. S. 86, 93.

[5] S. Rep. No. 1202; H. R. Rep. No. 1463, 73d Cong., 2d Sess.

[6] 78 Cong. Rec. 8136, 11270, 11513.

[7] In *Romney* v. *United States*, 83 U. S. App. D. C. 150, 167 F. 2d 521, the Sergeant at Arms of the House of Representatives of the United States was convicted of presenting false statements of his accounts and of concealing shortages in reporting to the General Accounting Office, which was created as an establishment "independent of the executive departments and under the control and direction of the Comptroller General of the United States." 42 Stat. 23, 31 U. S. C. § 41.

language as to purpose—to indicate that not all falsifications but only those made to government organs were reached.

The 1948 revision put the statute into its present form.[8] 62 Stat. 683. The false claims provision became § 287 of Title 18 and retained its prior form without significant change. Section 1001 is the "false statements" section. Except for housekeeping changes in language which are of no particular significance, the deletion of the reference to corporations, and the transposition of the "in any matter" clause to the beginning of the section, there has been no change since the 1934 statute. There is no indication that the revision was intended to work any substantive change. It would thus be supposed that the statute retained its broad scope, a scope at least as broad as the false claims section, and could not be limited to falsifications made to executive agencies.

The appellee and the District Court rely on § 6 of Title 18 to restrict the scope of § 1001. Section 6 provides:

> "As used in this title:
>
> "The term 'department' means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government.
>
> "The term 'agency' includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense."

---

[8] In 1938, § 35 was divided into subsections, but the part of the statute with which we are here concerned was left unchanged. 52 Stat. 197.

The falsification here involved was held to be within the jurisdiction of the Disbursing Office of the House which it was thought could not meet the definitions in § 6. It seemed significant to the trial court "that Title 18, § 287 (formerly the first part of old Section 35) provides penalties against any one who 'makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim . . . knowing such claim to be false,' " whereas § 1001 does not contain such language. 120 F. Supp., at 861.

It might be argued that the matter here involved was within the jurisdiction of the Treasury Department, as the appellee's misstatements would require the payment of funds from the United States Treasury. Or, viewing this as a matter within the jurisdiction of the Disbursing Office, it might be argued, as the Government does, that that body is an "authority" within the § 6 definition of "agency." We do not rest our decision on either of those interpretations. The context in which this language is used calls for an unrestricted interpretation. This is enforced by its legislative history. It would do violence to the purpose of Congress to limit the section to falsifications made to the executive departments. Congress could not have intended to leave frauds such as this without penalty. The development, scope and purpose of the section shows that "department," as used in this context, was meant to describe the executive, legislative and judicial branches of the Government. The difference between the language of § 287 and that of § 1001 can only be understood in the light of legislative history. That history dispels the possibility of attaching any significance to the difference.

That criminal statutes are to be construed strictly is a proposition which calls for the citation of no authority.

510

But this does not mean that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature.[9]

The judgment below is accordingly

*Reversed.*

THE CHIEF JUSTICE, MR. JUSTICE BURTON and MR. JUSTICE HARLAN took no part in the consideration or decision of this case.

---

[9] Cf. *United States ex rel. Marcus* v. *Hess,* 317 U. S. 537; *Spivey* v. *United States,* 109 F. 2d 181.