October 31, 1979

## 79-80    MEMORANDUM OPINION FOR THE COMPTROLLER GENERAL OF THE UNITED STATES

### Conflict of Interest—18 U.S.C. § 207— Applicability to the General Accounting Office

The Attorney General has asked me to respond to your request for my opinion whether 18 U.S.C. § 207, as amended, and the interim regulations published by the Office of Personnel Management (OPM) on April 3, 1979, interpreting that provision, apply to officers and employees of the General Accounting Office (GAO).

Title IV of the Ethics in Government Act of 1978, 5 U.S.C. App., gives the Director of the Office of Government Ethics and the Director of OPM broad authority with respect to the establishment of ethical standards for officers and employees of any "executive agency," as defined in 5 U.S.C. § 105. Although that definition includes the GAO, you suggest in your letter to the Director of OPM that inclusion of the GAO under OPM's regulatory jurisdiction in Title IV was a "technical oversight" because GAO is treated as part of the legislative branch for public disclosure purposes. Whether the ethics regulations issued by OPM pursuant to Title IV of the Ethics in Government Act are in general applicable to GAO is, in the first instance, a matter to be resolved by OPM, and I shall therefore not address that issue.

Your letter to the Director of OPM also raises a broader questions, i.e., whether 18 U.S.C. § 207 applies of its own force to GAO. It is our opinion that § 207 does and that GAO accordingly is subject to the requirements of the interim regulations issued by OPM.

By its terms, § 207 applies to any person who has been "an officer or employee of the executive branch of the United States Government, of any independent agency of the United States, or of the District of Columbia." GAO would appear to be an "independent agency of the United States" under the plain meaning of this section.

433

GAO was established by 31 U.S.C. § 41, which provides in pertinent part:

> There is created an establishment of the Government to be known as the General Accounting Office, which shall be independent of the executive departments and under the control and direction of the Comptroller General of the United States.

This statutory description of GAO as an "establishment of the Government * * * independent of the executive departments" would appear to be roughly the equivalent of the phrase "independent agancy of the United States" in 18 U.S.C. § 207.

Moreover, the term "agency" is defined for purposes of title 8, United States Code, to include—

> any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense. [18 U.S.C. § 6.]

This is an expansive definition which, in effect, establishes a presumption that a governmental entity is an agency for purposes of a given title 18 offense, including 18 U.S.C. § 207.

We are not aware of any discussion in the legislative history of the revision of the conflict of interest laws in 1962 or the more recent 1978 amendments to 18 U.S.C. § 207, Pub. L. No. 95-521, 96-28, regarding the application of § 207 other conflict of interest laws to the GAO. The introductory phrase in § 207(a), as amended by the Ethics in Government Act, describing the former officers and employees to whom § 207 applies, is identical to the introductory phrase in § 207 as first enacted in 1962. The House report on the 1962 law describes § 207(a) (and §§ 208 and 209, which were identical in terms of coverage) as applying to former officers and employees of the "executive branch" or an "independent agency," without further elaboration. *See, e.g.,* H. Rept. 748, 87th Cong., lst sess. 11, 12, 13, 23, 24 (1961). The Senate report describes §§ 207, 208 and 209 as applying to present and former Government employees only in very general terms.

There is no indication in the legislative history of the Ethics in Government Act that Congress believed it was in any way altering the coverage of the section. Accordingly, we cannot read too much into the statement you quote from the conference report on the Ethics Act that § 207 "is the major statute concerning restrictions on the postservice activities by officials and employees of the Executive Branch." S. Doc. 95-127, 95th Cong., 2d sess. 73 (1978). *See also* S. Rept. 95-170, 95th Cong., lst sess. 31, 151 (1977). This statement is true, of course, as far as it goes, but it does not preclude a reading of § 207 as applying to independent agencies that may not be thought of as part of the executive branch.

There is thus nothing in the legislative history of § 207 to indicate that the term "independent agency of the United States" in § 207 (a) is not to be given its natural reading, a reading that would include the GAO. You suggest, however, that § 207 does not apply to the GAO because it is an agency of the legislative branch. You advert to a similar suggestion regarding the application of another conflict of interest statute to the same agency, 18 U.S.C. § 208, which was made by a leading commentator in this general area. B. Manning, *Federal Conflict of Interest Laws* 114 (1964).

It is true, as you point out, that 18 U.S.C. §§ 203 and 205 expressly apply to officers and employees in the executive, legislative, and judicial branches, and that 18 U.S.C §§ 207, 208 and 209 do not by their terms and were not intended to apply to officers and employees of the legislative and judicial branches. The question here, however, is whether the GAO was intended to be excluded from §§ 207, 208 and 209 as an agency of the legislative branch.

The argument for excluding the GAO from coverage under § 207 might be stronger if the statutes mentioned above referred only to executive, legislative, and judicial branches, because each governmental entity would then have to be placed in one of the branches for purposes of the conflict of interest provisions. GAO is often informally described as an agency of the legislative branch, *see, e.g., United States Government Manual* 52-57 (1978/79); *cf., Buckley* v. *Valeo*, 424 U.S. 1, 128 note 165 (1976). A statute provides for removal of the Comptroller General by joint resolution of the Congress, 31 U.S.C. §43, and the Comptroller General performs certain functions for the benefit of the Congress. If every governmental entity had to be placed in one of the three branches, it could be argued that GAO would more appropriately be regarded as an agency of the legislative branch.

But 18 U.S.C. §§ 203 and 205 apply to officers and employees "in the executive, legislative, or judicial branch of the Government, or in any agency of the United States" (emphasis added), thereby indicating that there are certain covered agencies that are not, for purposes of those provisions, part of any of the three branches. Similarly, 18 U.S.C. §§ 207, 208 and 209 refer both to employees of the "executive branch of the United States Government" and of "any independent agency of the United States." The term "independent agency" in those sections, read in *pari materia* with §§ 203 and 205, would also seem to include governmental entities that do not fit precisely into any of the three branches.

Accordingly, we construe the term "executive branch" in these provisions to refer to those agencies that are subject to the President's discretion and control. Similarly, we construe the inclusion of officers and employees of the legislative branch in 18 U.S.C. §§ 203 and 205—and the corresponding exclusion of officers and employees of the legislative branch in §§ 208 and 209—to encompass only those individuals who are properly regarded as officers or employees of the Congress or one of its

435

Houses or agencies and who are responsible in some immediate sense to the Congress for the performance of their duties. This would include, for example, the staffs of Members of Congress, committee staffs, the Secretary of the Senate, the Clerk of the House of Representatives, and other officers of the two Houses, and those officers and employees appointed by the Congress or one House thereof to perform functions in aid of the legislative process. The Office of Technology Assessment, created "within and responsible to the legislative branch of the Government," 2 U.S.C. § 472(a), and headed by a Board appointed by the President *pro tempore* of the Senate and the Speaker of the House of Representatives, 2 U.S.C. § 473(a), would be within the legislative branch for purposes of 18 U.S.C. §§ 202-209 under this test. So would the Congressional Budget Office, which is established as "an office of the Congress" and headed by a Director appointed by the Speaker of the House and President *pro tempore* of the Senate, 2 U.S.C. §601(a).

The GAO, on the other hand, is created as an "establishment of the Government" which is "independent" of the executive departments, 31 U.S.C. § 41, without any express statutory provision that it is in the legislative branch. Moreover, unlike the Technology Assessment Board and the Director of the Congressional Budget Office, the Comptroller General is appointed by the President, by and with the advice and consent of the Senate, 31 U.S.C. § 42. He holds office for a term of 15 years and is by statute removable for cause by joint resolution of the Congress, thereby involving the President in the removal as well, 31 U.S.C. § 43. The establishment of a fixed tenure of office, subject to removal for cause, has generally been regarded as intended to promote an element of independence of action. *Cf.*, *Humphrey's Executor* v. *United States*, 295 U.S. 602, 624-26 (1935). Thus, while the Comptroller General and GAO are independent of the executive branch, they apparently are expected to be somewhat independent of the legislative branch as well. I therefore am led to conclude that whatever their status for other purposes, the Comptroller General and officers and employees of the GAO are officers and employees of an "independent agency of the United States" for purposes of 18 U.S.C. § 207—§§ 208 and 209 as well. This description is not inconsistent with the occasional description of the GAO as an agency of the legislative branch. Independent regulatory commissions—which all would concede are covered by § 207—are sometimes described in the same fashion, *Humphrey's Executor* v. *United States*, 295 U.S. at 628-30.

We do not believe that our interpretation will have a disruptive impact on the operations of your agency. Soon after the conflict of interest laws were revised in 1962, the Comptroller General promulgated standards of conduct for employees of the GAO which called the employees' attention to the recently enacted conflict of interest provisions. 14 CFR § 6.6, 28 F.R. 9665 (Sept. 4, 1963). Those regulations noted, for example, that "[w]hile it is not clear whether the General Accounting Office comes within the scope of the terms used in section 208, the prohibition will for

the present be viewed as applying to officers and employees of the General Accounting Office." *Id.* § 6.6(a)(iii). The regulations also called employees' attention to 18 U.S.C. §§ 207 and 209, which apply to exactly the same agencies as § 208. Later versions of the regulations merely listed a number of criminal statutes of which GAO employees should be aware but without noting any questions whether the conflict of interest provisions actually applied to GAO. *See, e.g.,* 31 F.R. 5293, 5296-7 (April 2, 1966). The most recent GAO standard of conduct regulations likewise call employees' attention to a number of criminal statutes applicable to Government employees, including 18 U.S.C. § 207. 4 CFR § 6.13 (1979).

The prior regulations issued by the Comptroller General were issued on the authority of 31 U.S.C. § 52, which gives the Comptroller General the authority to promulgate regulations to carry out the work of the GAO. The citation to 31 U.S.C. § 52 was followed with the statement: "Interpret *or* apply 18 U.S.C. 201-218" (emphasis added). This citation of authority was carried forward until the present GAO conduct regulations were issued in 1977. 42 F.R. 47173, 47174 (Sept. 20, 1977). The present regulations state as the source of authority for their issuance: "31 U.S.C. 52, interpret *to* apply 18 U.S.C. 201-218" (emphasis added). This change presumably reflects a decision on the part of your agency to take the position that those criminal statutes do not apply of their own force, but rather are being applied by the Comptroller General as appropriate standards of conduct under his broad power to issue regulations. But, in any event, there has apparently not been a longstanding interpretation by your agency that the criminal statutes are not of their own force applicable to GAO. And, of equal significance, the substance of the statutory provisions has consistently been thought to state appropriate standards of conduct for present and former GAO employees. There is thus no room for the argument that departure from the plain meaning of the language in § 207 is required because the statute could not have been intended to apply to the GAO. *Cf., United States* v. *Bramblett*, 348 U.S. 503, 509 (1955).

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

437