UNITED STATES of America,
Plaintiff–Appellee,

v.

Simon Lee HOLMES,
Defendant–Appellant.

No. 87–5066.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 30, 1987.

Decided Feb. 26, 1988.

Arthur Anthony Lovisi, Norfolk, Va., for defendant-appellant.

John S. Martin, Sp. Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., Arlington, Va., on brief), for plaintiff-appellee.

Before PHILLIPS and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

SPROUSE, Circuit Judge:

Simon Lee Holmes appeals from the judgment of conviction entered after he pled guilty to one count of making a false statement in a matter within the jurisdiction of an agency of the United States. 18 U.S.C. § 1001. Holmes contends that his conviction must be set aside or, in the alternative, that he be permitted to withdraw his guilty plea because the facts underlying it do not establish a violation of 18 U.S.C. § 1001. We affirm.

Holmes was arrested on August 15, 1986, on a naval base in Norfolk, Virginia for illegal gambling. On September 22, he appeared before a United States Magistrate. While not under oath, Holmes stated that his name was "Charles Holmes" (his brother's name), and he signed a form consenting to proceed before the magistrate under the name "Charles Holmes." Holmes pled guilty to the gambling offense and the magistrate assessed a $250 fine. Holmes also signed his name as "Charles Holmes" to a form entitled "Financial Statement of Debtor," which he filed with the collections department of the United States Attorney's office. Holmes was on state parole at the time of his arrest. He used his brother's name because he feared that his parole would be revoked if the conviction were recorded in his name.

On January 12, 1987, a grand jury indicted Holmes on two counts of violating 18 U.S.C. § 1001.[1] Count 1 was based on

1. 18 U.S.C. § 1001 provides that:
    Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Holmes' false signature on the consent form, and Count 2 was based on his false signature on the financial statement.

Holmes agreed to plead guilty to Count 1 in return for the prosecution's agreement to dismiss Count 2. The district court questioned Holmes regarding the voluntariness of his plea and the accuracy of the Government's offer of proof. Holmes responded that his plea was voluntary and that the Government's factual allegations were accurate. The district judge accepted Holmes' guilty plea, and sentenced him to five years imprisonment with a recommendation he not be eligible for parole.

■ Holmes contends on appeal that his guilty plea cannot stand because the acts he admitted committing are not violative of 18 U.S.C. § 1001. He argues that the false statement he made by signing the consent form occurred in the context of a judicial proceeding and therefore was not made in a matter within the jurisdiction of a government agency as is required for a violation of section 1001. We disagree.[2]

■ A United States Magistrate's court is a "department or agency of the United States" as that term is used in 18 U.S.C. § 1001. Although all false statements made in a magistrate's proceeding are not subject to section 1001 sanctions, Holmes' false statement violates the act because it was made in an administrative setting. In *United States v. Bramblett,*

348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955), the Supreme Court stated that courts are "agencies" for the purposes of section 1001. It observed that the term "agency" should be given an "unrestricted interpretation," encompassing "the executive, legislative and judicial branches." *Id.* at 509. The Court of Appeals for the District of Columbia Circuit subsequently construed the statute to apply in the context of administrative or housekeeping functions of the judiciary but not in the context of judicial functions. *Morgan v. United States,* 309 F.2d 234, 237 (D.C.Cir.1962), *cert. denied,* 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963).[3]

We agree with this analysis. Section 1001 should not apply to the statements of a defendant made during a trial or related judicial proceeding. It appropriately applies, however, to false statements made to a judicial official during the execution of his administrative functions.

Whether a statement or a proceeding is "adjudicative" or "administrative" often may be a close question, but categorizing Holmes' statement is not challenging. We can think of nothing more administrative in character than signing a standardized consent form. *United States v. Plascencia–Orozco,* 768 F.2d 1074, 1076 (9th Cir.1985) (Magistrate's questioning of defendant as to his true identity "was not an exercise of the magistrate's judicial powers, but was a

**2.** We have jurisdiction under 28 U.S.C. § 1291 of this direct appeal from the final judgment of conviction entered on the guilty plea. Exercising that jurisdiction, we may review a properly raised issue respecting the validity of the guilty plea, notwithstanding that there was no pre-sentence motion to withdraw the plea. Fed.R. Crim.P. 32(d). However, the essential issue in this case, although not labeled as such by the parties, is whether the district court properly determined, in accordance with Fed.R.Crim.P. 11(f), that "there is a factual basis for the plea" —more specifically, whether the undisputed facts upon which the plea was made and accepted constituted a violation of the statute upon which defendant was charged. We review that determination freely, as one of law.

**3.** In *Morgan,* the defendant falsely represented to a court that he was a licensed attorney. He appealed his section 1001 conviction on the ground that the court was not an "agency" within the meaning of the statute. The court inter-

preting *Bramblett* decided that the statute was violated, but stated:

> We are certain that neither Congress nor the Supreme Court intended the statute to include traditional trial tactics within the statutory terms 'conceals or covers up.' We hold only, on the authority of the Supreme Court construction, that the statute does apply to the type of action with which appellant was charged, action which essentially involved the 'administrative' or 'housekeeping' functions, not the 'judicial' machinery of the court.

309 F.2d at 237.

The distinction between administrative and judicial functions set out in *Morgan* has met with general acceptance. *See, e.g., United States v. Lawson,* 809 F.2d 1514 (11th Cir.1987); *United States v. Plascencia–Orozco,* 768 F.2d 1074 (9th Cir.1985); *United States v. Abrahams,* 604 F.2d 386 (5th Cir.1979).

function of the magistrate's administrative duties;" section 1001 conviction affirmed); *see also United States v. Burkley*, 511 F.2d 47, 50 (4th Cir.1975). Accordingly, Holmes' statement fell within the administrative prong of the distinction and was subject to section 1001.

■ Holmes argues, however, that even if section 1001 is applicable to his statement, he is protected by the "exculpatory no" doctrine. The "exculpatory no" doctrine is a judicially created exception to section 1001, which excludes from sanction exculpatory responses to investigative questions posed by government agents which could implicate a defendant criminally. *See United States v. Medina De Perez*, 799 F.2d 540, 541–44 (9th Cir.1986).

This circuit has yet to decide whether to adopt the "exculpatory no" doctrine. *See United States v. Cole*, 622 F.2d 98, 100 n. 2 (4th Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 221 (1980). We need not reach that question here, however, because Holmes' false signature does not come close to meeting the conditions for the doctrine's application.

■ The preconditions for application of the "exculpatory no" doctrine are collected in *Medina De Perez*.[4] Among these is the requirement that a truthful response would have incriminated the declarant. 799 F.2d at 544. While the magistrate possibly would have sentenced Holmes more severely had she known his true identity, that information alone would not have been incriminating. An admission by Holmes of his identity would not have exposed Holmes to criminal liability, but would merely have exposed facts about his criminal record relevant to sentencing. Another requirement for application of the

doctrine is that the false statement cannot be made in the context of a "routine exercise of administrative responsibility." *Id.* Determining the identity of a defendant is a routine administrative task. The "exculpatory no" doctrine is simply inapplicable in this context.

In view of the above, the judgment of the district court is affirmed.[5]

AFFIRMED.

---

**4.** (1) "The false statement must be unrelated to a claim to a privilege or a claim against the government."
(2) "The declarant must be responding to inquiries initiated by a federal agency or department."
(3) "The false statement must not 'impair the basic functions entrusted by law' to the agency."
(4) The false statement must be made in the context of an investigation rather than of a "routine exercise of *administrative* responsibility."

(5) The false statement must have been made in a situation where a truthful answer would have incriminated the declarant.
799 F.2d at 544 and n. 5.

**5.** We find no merit to Holmes' contention that he was improperly pressured into pleading guilty because the prosecutor charged him with two counts even though he allegedly committed only one offense.