UNITED STATES of America

v.

Harry F. BROOKS.

Criminal No. 96–363.

United States District Court,
E.D. Pennsylvania.

Nov. 19, 1996.

William J. Winning, Cozen and O'Connor, Philadelphia, PA, for Harry F. Brooks.

Catherine Votaw, U.S. Attorney's Office, Philadelphia, PA, for U.S.

## MEMORANDUM

CAHN, Chief Judge.

Defendant Harry F. Brooks is charged with eighteen counts of making false statements to the United States Copyright Office pursuant to 18 U.S.C. § 1001, and with four counts of copyright infringement under 17 U.S.C. § 506(a). Brooks now moves to dismiss the false statements counts of the indictment on the grounds that 18 U.S.C. § 1001 reaches only agencies in the executive branch of government, and therefore does not apply to false statements made to the Copyright Office.

### I. Background

Harry Brooks is vice-president of Suburban Cable TV Co., Inc. ("Suburban Cable"). Suburban Cable, as a cable company that retransmits copyrighted works which are protected by the Copyright Act, is required by the Copyright Act to submit a Statement of Account to the Copyright Office twice a year. This Statement of Account must contain the rates charged by the cable company, the number of subscribers, and the total revenue received from those subscribers. Suburban Cable then must calculate the amount of copyright royalty fees due with its Statement and submit that amount to the Copyright Office. The Copyright Office distributes those royalties and adjudicates the claims of copyright holders. 17 U.S.C. § 801; 37 C.F.R. Parts 251 to 259.

The indictment charges that Brooks underreported the rates charged to subscribers, the revenues for basic cable service, and the amount due to the Copyright Office. He is charged with eighteen (18) counts of filing false statements pursuant to 18 U.S.C. §§ 1001 and 2(b), and four (4) counts of copyright infringement pursuant to 17 U.S.C. § 506(a) and 18 U.S.C. §§ 2319 and 2(b).[1]

## II. Discussion

### A. The Scope of Section 1001

■ Section 1001 criminalizes false statements made "in any matter within the jurisdiction of any department or agency of the United States."[2] In *Hubbard v. United States*, — U.S. —, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995), the Supreme Court clarified the scope of § 1001. In that case, the Court held that a defendant could not be prosecuted under § 1001 for false statements to the bankruptcy court because a bankruptcy court is not an "agency" of the United States, and because the term "department" in § 1001 applies only to departments of the executive branch. *Hubbard*, — U.S. at —, 115 S.Ct. at 1757. This holding explicitly overruled a 1955 Supreme Court decision, *United States v. Bramblett*, 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955), which had construed the term "department" under § 1001 to apply to all three branches of government.

Brooks argues that counts 1 through 18 of the indictment must be dismissed pursuant to the Supreme Court's decision in *Hubbard* because *Hubbard* restricts prosecutions under § 1001 to false statements made to the executive branch, and Brooks' statements were made to the legislative branch. The government contends that while *Hubbard* limited the term "department" to the executive branch, the Court left open the possibili-

ty that "agency" could have a broader meaning.

This Court agrees with Defendant. In discussing the history of § 1001 and its *Bramblett* holding, the Supreme Court in *Hubbard* articulated its reasoning in terms of distinctions between the three branches of government. Though it could have, the Court did not restrict itself to the word "department." It discussed the history of § 1001 and noted that the 1934 Act, which codified § 1001, was passed in response to "the proliferation of fraud in the newly formed Executive agencies." *Hubbard*, — U.S. at —, 115 S.Ct. at 1761. The Court went on to say that this history gives no "indication that Congress even considered whether the 1934 Act might apply outside the Executive Branch ... [I]t would be curious indeed if Congress truly intended the 1934 Act to work a dramatic alteration in the law governing misconduct in the court system or the Legislature." *Id.* The Court continued, stating that *Bramblett*'s holding, which "lumped all three branches together in one and the same breath" was an "erroneous construction of § 1001." *Id.* at —, —, 115 S.Ct. at 1763, 1765. Because the *Hubbard* Court expressed its opinion in terms of the branches of government, and not in terms of departments versus agencies, I find that *Hubbard* supports Brooks' argument that prosecutions under § 1001 are limited to false statements to the executive branch, regardless of whether the division to which the statement was made is a "department" or an "agency."

The government bases its argument to the contrary solely on footnotes 3 and 5 in the *Hubbard* opinion. In footnote 3, the Court "express[ed] no opinion as to whether any other entity within the Judicial Branch might

---

1. For purposes of a motion to dismiss portions of an indictment, "the district court accepts as true the factual allegations set forth in the indictment." *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir.1990).

2. The full text of Section 1001 at the time of the indictment read as follows:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

be an 'agency' within the meaning of § 6." [3] *Id.* at ——— n. 3, 115 S.Ct. at 1757 n. 3. In footnote 5, the Court, in discussing Bramblett's 1955 fraudulent statements to the Disbursing Office of the House of Representatives, noted that his fraud was "arguably directed at an 'agency' within the meaning of § 1001." *Id.* at ——— n. 5, 115 S.Ct. at 1759 n. 5. I do not find the Supreme Court's reluctance to express an opinion, or its reference to the explicitly overturned *Bramblett* opinion, convincing in light of the broader language of *Hubbard.* The fact that the Court noted in a footnote that it was not restricting itself to a particular definition of "agency" does not negate or contradict its holding that the 1934 Act which codified § 1001 used words "whose ordinary meaning connotes the ·Executive Branch," not the Legislative or Judicial branches. *Id.* at ———, 115 S.Ct. at 1760. Given this language, it would not make sense to read *Hubbard* in the way requested by the government.

Every court that has interpreted *Hubbard* has refused to allow § 1001 prosecutions for false statements to the legislative or judicial branches. The District of Columbia Circuit, in May of 1995, held that "[i]n *Hubbard,* the Court narrowed the reach of § 1001 to matters within the executive branch, a coverage consistent with both the common usage of 'department' and that term's definition in Title 18." *United States v. Dean,* 55 F.3d 640, 658–59 (D.C.Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1288, 134 L.Ed.2d 232 (1996). Later, in *United States v. Rostenkowski,* the D.C. Circuit stated that "a false statement made to the Congress is not within the ambit of the statute prohibiting false statements to 'any department or agency of the United States.'" *Rostenkowski,* 59 F.3d 1291, 1301 *reh'g denied,* 68 F.3d 489

(D.C.Cir.1995). The D.C. District Court recently held that the "Supreme Court's reasoning [in *Hubbard* ] leads to the inescapable conclusion that § 1001 extends only to. statements made to departments or agencies within the Executive Branch." *United States v. Watt,* 911 F.Supp. 538, 543 (D.D.C. 1995). Finally, as recently as March 1996, the D.C. District Court noted that the "focus of the Court of Appeals' decisions [in *Dean* and *Rostenkowski*], as well as of the Supreme Court holding in *Hubbard,* was on the distinction between the Executive Branch— to which section 1001 applies—and the legislative and judicial branches—to which it does not." *United States v. Oakar,* 924 F.Supp. 232, 237 (D.D.C.1996). There are no decisions which support the government's contention that *Hubbard* applies to "departments" only. [4]

Further support for this Court's holding today comes from Congress itself, which recently amended § 1001 to explicitly criminalize false statements made "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." 18 U.S.C. § 1001(a), *as amended by* False Statements Accountability Act of 1996, October 11, 1996. The fact that Congress felt the need to amend § 1001 in order to include false statements beyond the executive branch shows that it believed § 1001 had been restricted after *Hubbard.* Indeed, Robert S. Litt, Deputy Assistant Attorney General for the Criminal Division of the U.S. Department of Justice, testified before Congress that "courts have interpreted *Hubbard* broadly to mean that section 1001 applies only to statements within the jurisdiction of the Executive branch." Statement of Robert S. Litt, Deputy Assistant Attorney

---

3. 18 U.S.C. § 6 defines "agency" for purposes of Title 18 as follows:

The term 'agency' includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

4. Both the D.C. Circuit and the Ninth Circuit have promulgated unpublished opinions in this matter. *See United States v. Levine,* 72 F.3d 920

(Table), 1995 WL 761834 *2 (D.C.Cir. Dec. 4, 1995) ("the Supreme Court [in *Hubbard* ] held that the words 'department or agency,' as used in the statute, referred only to parts of the executive branch, and not the legislative branch"); *United States v. Hansen,* 66 F.3d 336 (Table), 1995 WL 536256, *2 (9th Cir. Sept. 8, 1995) ("[I]n *Hubbard,* the Supreme Court, overruling contrary precedent, held that 18 U.S.C. § 1001 was meant to apply only to false claims made to the Executive Branch, not to false claims made to Congress.").

General Criminal Division, Department of Justice, before the Committee on the Judiciary, United States Senate, concerning Amendments to the False Statements Act, May 14, 1996. This Court is convinced that between the time of the *Hubbard* decision and the recent amendment of § 1001, the reach of § 1001 did not extend to false statements made to departments or agencies in the legislative branch.

### B. Status of the Copyright Office

■ The government next argues that the Copyright Office is an "agency" under § 1001. In light of my interpretation of *Hubbard,* the Copyright Office can only be an "agency" for purposes of § 1001 if it resides within the executive branch of government.[5] This proposition is untenable.

The Copyright Office is a part of the Library of Congress—a fact not disputed by the government. Gov.Mem. in Opp. to Def. Motion to Dismiss at 3. The Library of Congress is clearly a part of Congress, and therefore part of the legislative branch of government. *See Keeffe v. Library of Congress,* 777 F.2d 1573, 1574 (D.C.Cir.1985) ("the Library of Congress [ ] is a congressional agency"). This appears to refute the government's position that the Copyright Office is part of the executive branch.

However, the government cites to one Fourth Circuit opinion in which the court held that the Copyright Office acts as an executive agency. *Eltra Corp. v. Ringer,* 579 F.2d 294, 301 (4th Cir.1978). This case is directly contradicted by a Second Circuit case cited by the defendant, in which the court stated that the Copyright Office is a part of the legislative branch. *See Harry Fox Agency, Inc. v. Mills Music, Inc.,* 720 F.2d 733, 736 (2d Cir.1983), *rev'd on other grounds sub nom., Mills Music v. Snyder,* 469 U.S. 153, 105 S.Ct. 638, 83 L.Ed.2d 556 (1985)[6] (the Act in question was redrafted by "the Copyright Office of the Library of Congress, which is a part of the legislative branch itself."). Neither *Eltra* nor *Mills Music* has been cited for its holding regarding the status of the Copyright Office.[7] The status of the Copyright Office is an open question in the Third Circuit, and I do not find *Eltra* persuasive.

The Copyright Office has the power to promulgate regulations and administer legislative programs, powers which the government rightly points out are generally associated with executive agencies. Gov.Opp. to Def. Motion to Dismiss at 6. However, when the Copyright Office proposes regulations it includes a statement that the "Copyright Office is a department of the Library of Congress and is a part of the legislative branch. Neither the Library of Congress nor the Copyright Office is an 'agency' within the meaning of the Administrative Procedure Act" except as otherwise provided by the Copyright Act. *See, e.g.,* 58 Fed.Reg. 45263 (to be codified at 37 C.F.R. Pt. 201) (proposed Aug. 27, 1993).[8] It is the Copyright Act, not the Administrative Procedure Act,

---

5. The government claims that the Copyright Office is covered under § 1001 because it fits squarely within the definition of "agency." This argument misses the point. The question after *Hubbard* is whether an entity such as the Copyright Office is in the executive branch. Only if this is answered in the affirmative would we look to the definition of agency in 18 U.S.C. § 6 to determine if the Copyright Office is an agency. This Court does not express an opinion as to the existence of "agencies" outside the executive branch for purposes of prosecutions under § 1001.

6. The issue in *Mills Music, Inc. v. Snyder* was the scope of the derivative-works exception of the Copyright Act, and it was on this ground that the Second Circuit and the Supreme Court disagreed. The location of the Copyright Office was not a decisive issue for either court, though Justice White, in dissent, noted that "the Copyright Act is unusual in that much of it, including the derivative-works exception, was drafted by the Copyright Office, which is itself an arm of Congress." *Mills Music,* 469 U.S. at 182 n. 6, 105 S.Ct. at 654 n. 6 (1985).

7. *Eltra* was cited once in 1988 by the United States Claims Court for the proposition that the Librarian of Congress performs functions which may be legislative, executive, or judicial. *Transamerica Corp. v. United States,* 15 Cl.Ct. 420, 472 (Claims Court 1988), *aff'd* 902 F.2d 1540 (Fed. Cir.1990).

8. *See also* 58 Fed.Reg. 34544 (to be codified at 37 C.F.R. Pt. 201) (proposed June 28, 1993); 50 Fed.Reg. 9270 (to be codified at 37 C.F.R. Pt. 201) (proposed Mar. 7, 1985); August 16, 1985 interim regulations, Title 37, Chapter II, Part 201 [Docket RM 86–6] (stating that the Copyright Office is a part of the legislative branch).

**834**

that dictates the policies and procedures of the Copyright Office. The mere fact that the Copyright Office is required to perform "administrative functions and duties" (17 U.S.C. § 701(a)) under the Copyright Act is not enough to make the Copyright Office a component of the executive branch. Acting similarly to an executive agency is not the same as being part of the executive branch. The Copyright Office is a division of the Library of Congress, which is a part of the legislative branch, and thus the Copyright Office is part of the legislative branch. Therefore, following the Supreme Court's holding in *Hubbard*, § 1001 does not reach the Copyright Office and counts 1 through 18 of the indictment against Harry F. Brooks must be dismissed.

### III. Conclusion

 For the reasons set forth above, the Court grants Defendant's Motion to Dismiss Counts 1 through 18 of the Indictment.[9] An appropriate order follows.

### ORDER

AND NOW, this 19 day of November, 1996, upon consideration of Defendant's Mo-

---

9. Defendant Brooks has also filed a second motion to dismiss counts 1 through 18 on the grounds that his copyright-related crimes can be charged only under the criminal provisions of the Copyright Act, and not as general crimes under 18 U.S.C. § 1001. This second motion is based on *Dowling v. United States*, 473 U.S. 207, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985), in which the Supreme Court held that, because the National Stolen Property Act did not plainly and unmistakably cover defendant's copyright-related conduct, the government could proceed only under the Copyright Act and not under the National Stolen Property Act. Though this second motion is moot in light of the Court's decision to grant Brooks' first motion, the Court finds that the second motion would also provide sufficient grounds on which to dismiss counts 1 through 18.

The Supreme Court in *Dowling* looked closely at the language, legislative history, and purpose of the National Stolen Property Act, with the understanding that "[d]ue respect for the prerogatives of Congress in defining federal crimes prompts restraint in this area, where we typically find a 'narrow interpretation' appropriate." *Dowling*, 473 U.S. at 213, 105 S.Ct. at 3131 (citation omitted). The Court found that the Act was too "ill-fitting" to have been meant to include copyright violations, given that a copyright consists of "a series of carefully defined and carefully delimited interests to which the law affords correspondingly exact protections." *Id.* at 216, 218, 105 S.Ct. at 3133, 3134. Therefore,

tion to Dismiss Counts 1 through 18 of the Indictment, the Government's Response, and Defendant's Reply, it is hereby ORDERED that Defendant's Motion is GRANTED.

the defendant could not be prosecuted for his acts under both the Copyright Act and the National Stolen Property Act.

Similarly, 18 U.S.C. § 1001 is too broad and general to include copyright violations. Section 1001 was drafted in 1934 to combat fraud in executive agencies; nothing in that history indicates that copyright actions were meant to be included, nor was it amended to provide for inclusion of copyright at any time. Instead, Congress carefully and thoughtfully set forth criminal provisions in the Copyright Act.

In light of the Supreme Court's language in *Dowling* about the uniqueness of copyright and the care with which Congress drafted the criminal provisions of the Copyright Act, this Court does not see how the government can proceed against Brooks under both § 1001 and the Copyright Act. The subject of this prosecution is Brooks' infringement of the copyright holders' rights to full payment when their works were shown on television. Though Brooks did not have direct contact with those persons, they are the real injured parties and this prosecution was initiated to vindicate their rights. This is in essence a copyright infringement action, and the government must proceed within the limits of the criminal provisions of the Copyright Act as drafted by Congress. Therefore, had it been necessary to decide Brooks' second motion to dismiss, this Court finds that counts 1 through 18 of the indictment would have been dismissed.