**UNITED STATES of America, Appellee,**

v.

**Vincent S. TRACY, Jr., Defendant–Appellant.**

**No. 564, Docket 96–1100.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 31, 1996.

Decided March 13, 1997.

Joel L. Daniels, Buffalo, NY, for defendant-appellant.

Joseph M. Guerra, III, Assistant United States Attorney, Western District of New York (Patrick H. NeMoyer, United States Attorney, Western District of New York, on the brief), Buffalo, NY, for appellee.

Before: FEINBERG, WALKER and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Vincent S. Tracy, Jr., appeals his conviction[1] in the United States District Court for the Western District of New York (William M. Skretny, *Judge*), on one count of conspiracy to make false statements in violation of 18 U.S.C. § 371[2] and two counts of making false statements in violation of 18 U.S.C. § 1001.[3] The court imposed a sentence of twenty-one months' imprisonment followed by two years of supervised release on each count, to be served concurrently, and $150 in special assessments. Most of the issues presented in this appeal are disposed of in a summary order entered simultaneously herewith. We consider here only the question of whether the district court erred in finding that Tracy's false statements were made with respect to a matter "within the jurisdiction of a department or agency of the United States," as that phrase is used in 18 U.S.C. § 1001.

## I. BACKGROUND

In December 1988, defendant, a lawyer, and his business partner, Anthony DeMola, received a $65,000 loan, represented by a promissory note, from William Hood, a drug dealer and occasional client of defendant. Defendant and DeMola were to repay the loan in equal monthly installments from February 1, 1989 until February 1, 1991. In 1989 and 1990, Hood received $13,205 in cash in installment payments and a check for $7,500, as well as free meals at a restaurant co-owned by defendant and DeMola.

In January 1991, Hood was arrested by the Drug Enforcement Agency ("DEA"), and a search warrant was executed at his residence. During the search, DEA agents found the promissory note evidencing the $65,000 loan to defendant and DeMola. Subsequently, Assistant United States Attorney ("AUSA") Richard Kaufman prepared an application for a seizure warrant for the proceeds of the loan. The application was granted on January 24, 1991 by Magistrate Judge Edmund F. Maxwell. The seizure warrant was served upon defendant, DeMola

---

1. Defendant was found not guilty on one count of conspiracy to engage in money laundering transactions, in violation of 18 U.S.C. § 371, four counts of engaging in money laundering transactions, in violation of 18 U.S.C. §§ 1957 and 2, and one count of making false statements to a grand jury, in violation of 18 U.S.C. § 1623.

2. 18 U.S.C. § 371 provides as follows:

   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

3. 18 U.S.C. § 1001 provides in relevant part as follows:

   Whoever, *in any matter within the jurisdiction of any department or agency of the United States* ... makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined ... or imprisoned ... or both. (Emphasis supplied.)

and Hood and directed that the unpaid balance of the loan from Hood be paid to the government. In March 1991, the magistrate judge granted a temporary stay of the execution of the warrant, and in June 1991, in order to postpone enforcement of the seizure warrant pending the outcome of a DEA forfeiture proceeding against Hood, he extended the stay in an order which provided, in part, as follows:

> ORDERED, the directions to comply with the seizure warrant issued on January 24, 1991 by this Court are hereby stayed until the administrative forfeiture procedure is completed now pending with the Drug Enforcement Administration in Washington, D.C. It is further
>
> ORDERED, that no payments or consideration be given pursuant to this agreement to either employees, agents or independent contractors of the Government or of WILLIAM R. HOOD *until further order of this Court.*

(Emphasis supplied.)

From January 1991 until early June 1991, defendant represented himself and DeMola in the seizure proceedings. During this time, AUSA Kaufman told defendant on several occasions that defendant and DeMola would receive credit for the $13,000 in payments that were recorded in Hood's ledger book. He also told defendant to produce any other evidence to document repayments to Hood—repayments that presumably could also be credited to defendant and DeMola.

In June 1991, defendant retained John Pieri, an attorney, to represent him in the matter of the seizure warrant. At a status conference for the seizure proceedings, the magistrate judge said to Pieri and AUSA Kaufman, "you guys ought to get this matter resolved. Go out and try to resolve it." The magistrate judge did not, however, order the parties to enter into settlement negotiations, and the docket entries for the seizure proceeding do not show the entry of any order regarding settlement.

In October 1991, a DEA administrative order of forfeiture was entered with respect to the $65,000 loan, and in November 1991, AUSA Kaufman sent the magistrate judge a letter stating that he "would recommend that we proceed in this voluntary, informal manner in an attempt to resolve some of the issues that will likely arise in any future litigation. However, if you determine that a status meeting should be held, please so advise."

In the late summer and early fall of 1991, DeMola had several conversations with defendant about receiving credit for the payments that had already been made on the $65,000 loan. Defendant allegedly told DeMola, contrary to what defendant had previously been told by AUSA Kaufman, that no credit would be given to DeMola and defendant for the $13,000 in cash payments that they had made and that defendant was not sure whether they would receive credit for the meals that Hood had eaten at their restaurant. Defendant then persuaded DeMola and DeMola's father to sign affidavits, prepared by defendant, falsely stating that DeMola's father had given DeMola $20,000 in cash to pay Hood, in order to provide false documentation of payments made on the loan.[4]

Once the DeMolas executed the affidavits, defendant turned them over to Pieri, who delivered them to AUSA Kaufman just prior to a status meeting with Magistrate Judge Maxwell in February 1992. Pieri later testified that he was under no court directive to submit affidavits to the court or the government, but that he gave the affidavits to AUSA Kaufman on the day of the status meeting because he had just received them and did not have time to mail them to Kaufman. The magistrate judge never asked for the affidavits, the affidavits were never filed with the district court, and the magistrate judge was never present at any of the settlement discussions between Pieri and Kaufman.

---

4. The effect of defendant's scheme, had it succeeded, would have been that the government would have credited defendant and DeMola with a total of $40,000 in payments on the loan, instead of the approximately $20,000 in payments that they had actually made. DeMola and his father subsequently confessed that the affidavits were false and agreed to and did testify against defendant in this case.

Defendant was indicted by a grand jury on, *inter alia*, one count of conspiracy to make false statements in violation of 18 U.S.C. § 371 and two counts of making false statements in violation of 18 U.S.C. § 1001. The DeMola affidavits formed the basis of the § 1001 counts. Defendant filed a motion to dismiss these counts, on the ground that the false statements in the affidavits were made in a matter under the jurisdiction of the court, and accordingly were not punishable under 18 U.S.C. § 1001. In a decision and order dated August 11, 1995, Judge Skretny denied this motion. Defendant was subsequently convicted on the § 1001 charges and on one count under § 371.

## II. DISCUSSION

To be convicted of making a false statement under 18 U.S.C. § 1001, the false statement must be made with respect to "any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1001. In *Hubbard v. United States*, 514 U.S. 695, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995), the Supreme Court departed from its established precedent in holding that "a federal court is neither a 'department' nor an 'agency' within the meaning of § 1001." *Id.* at ——, 115 S.Ct. at 1765. *Hubbard* expressly overruled a prior Supreme Court decision to the contrary, *United States v. Bramblett*, 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955). *See Hubbard*, 514 U.S. at ——, 115 S.Ct. at 1765. Defendant argues that, in light of the Supreme Court's decision in *Hubbard*, we must find that his false statements were made to a court, which under *Hubbard* is not considered a "department or agency of the United States" for purposes of § 1001, and, accordingly, that his conviction cannot stand. We disagree.

In *Bramblett*, the Supreme Court concluded that the word "department" in § 1001 "was meant to describe the executive, legislative, and judicial branches of the Government." *Bramblett*, 348 U.S. at 509, 75 S.Ct. at 508. In the wake of *Bramblett*, federal courts carved out the "judicial function" exception to § 1001, under which § 1001 was found "not [to] apply to statements made to a

court acting in its judicial capacity." *United States v. Masterpol*, 940 F.2d 760, 766 (2d Cir.1991); *see also United States v. Deffenbaugh Indus., Inc.*, 957 F.2d 749, 752 (10th Cir.1992); *United States v. Holmes*, 840 F.2d 246, 248 (4th Cir.1988); *United States v. Mayer*, 775 F.2d 1387, 1388–92 (9th Cir.1985) (per curiam); *United States v. Abrahams*, 604 F.2d 386, 393 (5th Cir.1979); *Morgan v. United States*, 309 F.2d 234, 237 (D.C.Cir. 1962).

In revisiting the question of the scope of § 1001, the Supreme Court in *Hubbard* found its own earlier jurisprudence "seriously flawed." *Hubbard*, 514 U.S. at ——, 115 S.Ct. at 1758. Accordingly, the Court reversed course and held, instead, that the judiciary is *not* a "department or agency of the United States," within the contemplation of § 1001. *Id.* at ——, 115 S.Ct. at 1765. In *Hubbard*, the defendant, who had filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code, filed unsworn documents with the Bankruptcy Court that contained several false statements. *Id.* at ——, 115 S.Ct. at 1756. When the false statements came to light, the defendant was charged with, and convicted of, three counts of making false statements under § 1001. *Id.* at ——, 115 S.Ct. at 1756–57. The Court overturned the defendant's conviction, finding that because the false statements were made to the Bankruptcy Court in filed court documents, and because (as the Court now held), "a federal court is neither a 'department' nor an 'agency' within the meaning of § 1001," the defendant's conduct was not punishable under § 1001. *Id.* at ——, 115 S.Ct. at 1765.

Defendant claims that, because the magistrate judge ordered that no payments were to be made on the promissory note "until further order of this court," his false statements were made with respect to a matter that was solely within the jurisdiction of the district court, and not the U.S. Attorney's Office. We note, however, that while *Hubbard* narrowly construed the word "department" within the meaning of § 1001, it said nothing about the scope of the term "jurisdiction" in that statute. In our view, nothing in *Hubbard* suggests that false statements submitted to the United States Attorney's Of-

fice, are not statements to a "department or agency of the United States"—that is, that they fall outside the scope of § 1001—merely because the false statements concerned matters that are the subject of a federal court order or of proceedings pending in a federal court. The affidavits in question were not requested, filed, or even presented, to the court. Instead, they were provided to the government's attorney in the course of informal settlement negotiations, in an effort to settle a then-pending dispute concerning a seizure warrant. The difference between this case and *Hubbard,* simply put, is that defendant's false statements to the United States Attorney's Office in the instant case were designed to mislead or defraud that agency of the executive branch; the government here seeks to punish defendant for lying to the executive branch, not for lying in or to the district court. *See United States v. Palmisano,* 185 B.R. 476, 478 (D.Vt.1995). If we were to adopt defendant's interpretation of § 1001, that statute "arguably would not reach any false statement made to an [e]xecutive department if some connection, however trivial, could be shown to a judicial proceeding." *Id.* at 478–79.

We hold that where, as here, false statements are made to a department or agency of the executive branch of government in the course of settlement negotiations, and where these statements have not been presented to a federal court, such statements are made with respect to a matter "within the jurisdiction of any department or agency of the United States," as that phrase is used in 18 U.S.C. § 1001, notwithstanding the fact that the matter may also be within the jurisdiction of a federal court. *See United States v. Rodgers,* 466 U.S. 475, 479, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984) (endorsing broad reading of § 1001 "jurisdiction" to refer to "all matters confided to the authority of an agency or department").

We therefore conclude that defendant's conduct—making false statements to an Assistant United States Attorney with respect to a matter that was within the jurisdiction of the United States Attorney's Office—is punishable under § 1001.

## III. CONCLUSION

We agree with the district court that the false statements at issue here were made to a "department or agency of the United States" within the meaning of 18 U.S.C. § 1001 (namely, the United States Attorney's Office) and not to the district court. Accordingly, we agree with the district court's conclusion that defendant could be prosecuted under 18 U.S.C. § 1001, and we affirm the judgment of the court.